[No. 9503. In Bank. — January 24, 1887.]

### RICHARD S. FLOYD ET AL., RESPONDENTS, *v.* A. B. FORBES ET AL. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, APPELLANTS.

TRUST DEED — CONSTRUCTION. — The action was brought to obtain the construction of a deed of trust. The question presented by the appeal was whether interest should be allowed on the sum of seven hundred thousand dollars which the trustees were directed to expend in the erection of a telescope and observatory. The portion of the judgment of the

court below affecting the question reads as follows: "That the proceeds of the trust property constitute one fund, out of which the trustees are to execute the several trusts specified in said deed, and that the profits arising from investments of money in their hands are to be treated as a part of such fund, and not as accruing for the benefit of any of the said trusts, in the execution of which a definite sum is required to be paid or expended, so as to increase the amount of such payment or expenditure." *Held*, that the judgment was correct.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*McAllister & Bergin,* and *John B. Mhoon,* for Appellants.

*Cope & Boyd,* and *Jarboe & Harrison,* for Respondents.

TEMPLE, J.—This action was instituted to obtain the construction of a deed of trust made by James Lick to certain trustees, the plaintiffs herein. The deed was executed September 21, 1875, but the trustees were changed, and those now acting were selected in April, 1876.

James Lick died in October, 1876. After his death, the heirs manifested a disposition to contest the validity of the deed. This led to a compromise, the validity of which compromise was tested in a suit brought for that purpose, which was decided in December, 1879. The complaint in this suit was filed in August, 1884. Judgment was entered, answering the various questions propounded by the trustees, and from that judgment this appeal is taken by the board of Regents of the University of California. All the other beneficiaries of the trust seem to be satisfied with the judgment.

The deed conveys the property in trust for the following purposes: "1. To enter into possession of, have, receive, and recover the property and rents and profits thereof (except as herein excepted), and to let and lease (until sale), and to sell, convey, and dispose of the same,

and to convert the same into money (except as herein excepted) as rapidly as judicious management will permit, and out of the proceeds to make the payments herein below directed."

The deed further proceeds to designate various payments to be made by the trustees, and some expenditures. Some of the payments were to be made at once, and in the eighteenth subdivision the trustees are directed, "after discharging the trusts and making the payments hereinbefore mentioned, in the order hereinbefore set forth (except as herein otherwise directed), to make over and transfer the residue of the proceeds of the property hereby transferred and conveyed, and intended to be in equal proportions to the California Academy of Sciences and the Society of California Pioneers."

The third subdivision is the one in which the appellant is specially interested, and reads as follows:—

"3. To expend the sum of seven hundred thousand dollars ($700,000) for the purpose of purchasing land, and constructing and putting up on such land, as shall be designated by the party of the first part, a powerful telescope, superior to and more powerful than any telescope ever yet made, with all the machinery appertaining thereto and appropriately connected therewith, or that is necessary or convenient to the most powerful telescope now in use, or suited to one more powerful than any yet constructed; and also a suitable observatory connected therewith. The parties of the second part hereto, and their successors, shall, as soon as said telescope and observatory are constructed, convey the land whereupon the same may be situated, and the telescope and the observatory, and all the machinery and apparatus connected therewith, to the corporation known as the Regents of the University of California, and if, after the construction of said telescope and observatory, there shall remain of seven hundred thousand dollars in gold coin any surplus, the said parties of the second part shall

turn over such surplus to said corporation, to be invested by it in bonds of the United States, or of the city and county of San Francisco, or other good and safe interest-bearing bonds, and the income thereof shall be devoted to the maintenance of said telescope and the observatory connected therewith, and shall be made useful in promoting science; and the said telescope and observatory are to be known as 'The Lick Astronomical Department of the University of California.' "

The portion of the judgment to which the appellant objects is the fourth instruction, which reads as follows: —

" 4. That the proceeds of the trust property constitute one fund, out of which the trustees are to execute the several trusts specified in said deed, and that the profits arising from investments of money in their hands are to be treated as a part of such fund, and not as accruing for the benefit of any of the said trusts, in the execution of which a definite sum is required to be paid or expended so as to increase the amount of such payment or expenditure."

The appellant denies the correctness of this construction. It asks the court to say that the evident intention of James Lick was, that the trustees should proceed with reasonable diligence to sell the property, and as soon as sold, as much of it as was required should be appropriated to the different specific benefactions; that where the beneficiary could not at once receive the amount, (as was the case with the appellant), it would constitute a fund which might have been put at interest for the advantage of the beneficiary; that, for instance, there should have been a fund created for the purposes of the trust set out in the third subdivision of the deed, of seven hundred thousand dollars; that this amount, if not immediately required in performance of such trusts, could have been placed at interest for the benefit of the fund; on the contrary, the property was not sold when

it ought to have been, and thereby large amounts have been received as rents and profits; that under the construction placed upon the deed by the court below the residuary beneficiaries will receive the increment, some portion of which in justice and equity ought to have gone to the other beneficiaries; that now, in view of this fact, the court should regard that as done which ought to have been done, and by a just division of such increment, place the parties as near as may be in the position they would have been in had the trustees faithfully and diligently performed their duty.

Some of the donations were to be paid immediately. Such beneficiaries would certainly have better grounds for insisting upon the equitable principle contended for than the appellant. We understand that as to them the trusts have been fully performed. At all events, they make no complaints. We shall consider the matter solely with reference to the rights of the appellant.

A very large amount of property is involved in the trusts, which are quite numerous, and vary greatly in character. The trustees were to pay the debts of the donor then existing, and whatever debts he might require in his support, expenses, and the improvement of his homestead. They were to erect a group of bronze statuary, well worth one hundred thousand dollars, and various monuments. They were to expend, under the direction of certain named persons, one hundred and fifty thousand dollars in the erection and maintaining free baths. They were to found an institute called the Old Ladies' Home at a cost of one hundred thousand dollars. They were to found and endow at a cost of five hundred and forty thousand dollars the California School of Mechanical Arts, under the direction of certain named persons.

It will be seen that they were directed to expend the sum of seven hundred thousand dollars for the purpose of purchasing land, and constructing and putting up a

powerful telescope, superior to and more powerful than any ever yet made, and all the machinery appropriate or convenient to the most powerful telescope now in use, or suited to one more powerful than any yet constructed, and also a suitable observatory. When constructed, all should be conveyed to the Regents of the University, and if there should remain of said seven hundred thousand dollars in gold coin any surplus, it should be turned over to the Regents, to be by them invested.

It is evident, in the first place, that the active duties here enjoined upon the trustees could not be performed within any definite period, and certainly the donor must have known that it would require many years to accomplish the difficult task imposed upon them. Yet he directs a precise sum in gold coin to be expended, and when the work shall have been performed, he directs that the surplus, if any, remaining of that sum, be turned over. This evidently would not have justified the trustees in expending more than that precise sum under the claim that there was a fund which was entitled to share an increment. The direction to turn over the surplus remaining of the precise sum in gold coin is not apt language, if the desire was that the surplus remaining from a fund should be turned over, although he must have known that it would be a long time before all this money could be expended, yet no language is used indicating that it is to be invested so that any increment will accrue until the entire work is done, and then he expressly directs that the surplus, if any, shall be invested so as to produce an income.

It is also a significant circumstance in this connection, that as to the residuaries the deed directs that after discharging the trusts and making the payments in the order named, the residue be transferred to the residuaries. If the construction contended for by the appellant were the correct one, there appears no good reason

why the residuaries should not receive their residue as soon as the property was sold and the different funds created. It is evident that the donor intended that the entire property should remain as security for the different trusts in the order named. We therefore think the judgment should be affirmed.

It may be well to remark, however, that this judgment is only a construction of the trust deed. It does not pass upon the question, whether, if there has in fact been unnecessary or great delay, in consequence of which the residuaries have received profits which upon a proper performance of the trust would have been received by the specific beneficiary, a court of equity cannot make a fair adjustment of the matter. The trustees did not admit delay and ask for instructions in view of such fact. The appellant in its answer did not charge there had been such delay. Should such a controversy ever arise, the only effect of this judgment would be that the right of the beneficiary complaining to be compensated would be determined in view of the construction here given the deed.

Judgment affirmed.

McKinstry, J., McFarland, J., Paterson, J., and Thornton, J., concurred.